IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division



F I L E D

AUG - 7 1996

d/dhh

CLERK, U.S. DISTRICT COURT
RICHMOND, VA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | Criminal No.  3:96CR41 |
| v. ) | |
| ) | 21 U.S.C. § 846 |
| RONALD ZEBROWSKI, ) | Conspiracy to Distribute |
| aka "Ron G" ) | Cocaine (Powder and "Crack") |
| aka "Mark A. Ronaldson" ) | and Marijuana |
| aka "Ronald Stewart" ) | (Count 1) |
| aka "Jerold Stewart" ) | |
| aka "William Thomas" ) | 21 U.S.C. § 848 |
| aka "Charles Brooks" ) | Continuing Criminal |
| aka "Stanley B. Hill" ) | Enterprise |
| aka "Daniel R. Weston" ) | (Count 2) |
| aka "Karon B. Upshaw" ) | |
| aka "Joe" ) | 21 U.S.C. § 841(a)(1) |
| (Counts 1-3) ) | Possession with Intent |
| ) | to Distribute "Crack" Cocaine |
| STEPHEN ZEBROWSKI, Jr., ) | (Counts 3-4) |
| aka "Junior" ) | |
| aka "Lewis Brady" ) | 21 U.S.C. § 853 |
| aka "Stevon Green" ) | Notice of Criminal Forfeiture |
| aka "Edward Cartwright" ) | |
| aka "Felex C. Brown" ) | |
| aka "Leon Richard" ) | |
| (Counts 1-2) ) | |
| ) | |
| DAVID ZEBROWSKI, ) | |
| aka "Dog" ) | |
| aka "Mad Dog" ) | |
| aka "Lewis Brady" ) | |
| aka "David Stewart" ) | |
| aka "Eric Smith" ) | |
| (Count 1) ) | |
| ) | |
| STEPHEN ZEBROWSKI, Sr., ) | |
| (Count 1) ) | |
| ) | |
| VICTORIA ZEBROWSKI, ) | |
| aka "Keisha" ) | |
| (Count 1) ) | |
| ) | |
| GARVEY DIXON, ) | |
| aka "Rahn Wade" ) | |
| aka "Richie" ) | |
| aka "Jamaican Richard" ) | |
| (Count 1) ) | |

*110*

```
TRINI McDANIELS,                    )
        aka "John Paul Morris"      )
        aka "Brother-in-Law"        )
        aka "Bro-Law"               )
        aka "Freddie"               )
        aka "Norman Kelly"          )
        (Counts 1, 3)               )
                                    )
ORRANDY GOODWYN,                    )
        aka "Randy"                 )
        aka "White Boy"             )
        aka "Trash"                 )
        (Counts 1, 3-4)             )
                                    )
ARDELL CRANE,                       )
        aka "Slim"                  )
        aka "Deep Throat"           )
        (Counts 1, 3)               )
                                    )
PATRICK GREGORY,                    )
        aka "P"                     )
        (Count 1)                   )
                                    )
MARGO GREGORY,                      )
        (Count 1)                   )
                                    )
CURTIS SPAIN,                       )
        aka "Gadget"                )
        (Counts 1, 4)               )
                                    )
RONALD KERNS,                       )
        aka "Detroit"               )
        (Counts 1, 3)               )
                                    )
STACY JONES,                        )
        (Count 1)                   )
            Defendants              )
_____    )
```

## SUPERSEDING INDICTMENT

AUGUST TERM, 1996 - At Richmond, Virginia

## COUNT ONE

## CONSPIRACY TO DISTRIBUTE COCAINE (POWDER AND CRACK) AND MARIJUANA

### A.   The Conspiracy

THE GRAND JURY CHARGES THAT:

From on or about an unknown date in 1988 to August 7, 1996, in the Eastern District of Virginia, and elsewhere within the jurisdiction of the Court, the defendants

        RONALD ZEBROWSKI,
            aka "Ron G"
            aka "Mark A. Ronaldson"
            aka "Ronald Stewart"
            aka "Jerold Stewart"
            aka "William Thomas"
            aka "Charles Brooks"
            aka "Stanley B. Hill"
            aka "Daniel R. Weston"
            aka "Karon B. Upshaw"
            aka "Joe"

        STEPHEN ZEBROWSKI, Jr.,
            aka "Junior"
            aka "Lewis Brady"
            aka "Stevon Green"
            aka "Edward Cartwright"
            aka "Felex C. Brown"
            aka "Leon Richard"

        DAVID ZEBROWSKI,
            aka "Dog"
            aka "Mad Dog"
            aka "Lewis Brady"
            aka "David Stewart"
            aka "Eric Smith"

        STEPHEN ZEBROWSKI, Sr.,

        VICTORIA ZEBROWSKI,
            aka "Keisha"

        GARVEY DIXON,
            aka "Rahn Wade"
            aka "Richie"
            aka "Jamaican Richard"

3

TRINI McDANIELS,
    aka "John Paul Morris"
    aka "Brother-in-Law"
    aka "Bro-Law"
    aka "Freddie"
    aka "Norman Kelly"

ORRANDY GOODWYN,
    aka "Randy"
    aka "White Boy"
    aka "Trash"

ARDELL CRANE,
    aka "Slim"
    aka "Deep Throat"

PATRICK GREGORY,
    aka "P"

MARGO GREGORY,

CURTIS SPAIN,
    aka "Gadget"

RONALD KERNS,
    aka "Detroit"

STACY JONES,

did unlawfully, knowingly, and intentionally combine, conspire, confederate and agree among themselves and with other persons, known and unknown to the Grand Jury, to commit the following offenses against the United States:

(a). to distribute and possess with the intent to distribute a Schedule II controlled substance, that is more than 50 grams of a mixture and substance described in Title 21, United States Code, Section 841(b)(1)(a)(iii), which contains cocaine base, commonly known as "crack"; and,

(b). to distribute and possess with the intent to distribute a Schedule II controlled substance, that is a mixture and substance which contains cocaine in violation of Title 21, United States

4

Code, Section 841(a)(1); and,

(c). to distribute and possess with the intent to distribute a Schedule I narcotic controlled substance, that is a mixture and substance containing marijuana in violation of Title 21, United States Code, Section 841(a)(1).

B.  Manner and Means of the Conspiracy

The said unlawful combination, conspiracy, confederation and agreement was to be and was accomplished by the following means and in the following manner:

1.  It was a part of the conspiracy that defendants RONALD ZEBROWSKI and STEPHEN ZEBROWSKI, Jr., would and did control a national drug organization that distributed large quantities of "crack" and powder cocaine throughout the eastern United States including, but not limited to, the following cities:  Petersburg, Virginia; Virginia Beach, Virginia; Richmond, Virginia; and Washington, D.C.;

2.  It was a further part of the conspiracy that defendants RONALD ZEBROWSKI and STEPHEN ZEBROWSKI, Jr., would and did receive large shipments of cocaine from their suppliers in New York and Florida;

3.  It was a further part of the conspiracy that defendants RONALD ZEBROWSKI and STEPHEN ZEBROWSKI, Jr., would and did utilize various residences in Maryland, some containing secret compartments, as "stash houses" to store, package and distribute powder and "crack" cocaine and to store the proceeds of their drug trafficking;

5

4. It was a further part of the conspiracy that defendant DAVID ZEBROWSKI, brother to co-defendants RONALD ZEBROWSKI and STEPHEN ZEBROWSKI, Jr., would and did distribute large quantities of "crack" and powder cocaine for the organization in the area of Virginia Beach, Virginia;

5. It was a further part of the conspiracy that defendants STEPHEN ZEBROWSKI, Sr., and VICTORIA ZEBROWSKI aka "Keisha", father and sister, respectively, to co-defendants RONALD ZEBROWSKI, STEPHEN ZEBROWSKI, Jr., and DAVID ZEBROWSKI, would and did transport large quantities of powder cocaine in secret compartments in various vehicles from Ft. Lauderdale, Florida, to various "stash houses" controlled by defendant RONALD ZEBROWSKI in Maryland;

6. It was a further part of the conspiracy that defendants STEPHEN ZEBROWSKI, Sr., and VICTORIA ZEBROWSKI aka "Keisha", would and did transport large quantities of United States currency, which constituted the proceeds of the drug trafficking activities of the Zebrowski organization, in secret compartments in various vehicles from Maryland to Ft. Lauderdale, Florida, for delivery to defendant STEPHEN ZEBROWSKI, Jr.;

7. It was a further part of the conspiracy that defendant VICTORIA ZEBROWSKI aka "Keisha" would and did purchase real estate in her name on behalf of the organization using the drug proceeds generated by the Zebrowski organization;

8. It was a further part of the conspiracy that defendant GARVEY DIXON would and did assist co-defendants RONALD ZEBROWSKI and STEPHEN ZEBROWSKI, Jr., in all aspects of the operation of this

6

drug organization including, but not limited to, the following: deliveries of cocaine, the packaging of cocaine for distribution, and the collection of drug proceeds;

9.  It was a further part of the conspiracy that defendants RONALD ZEBROWSKI and STEPHEN ZEBROWSKI, Jr., would and did deliver large quantities of "crack" and powder cocaine to the following persons for further sale in the areas of Petersburg, Richmond, and Virginia Beach, Virginia:  defendants TRINI McDANIELS, ORRANDY GOODWYN, ARDELL CRANE, PATRICK GREGORY and MARGO GREGORY and other coconspirators;

10.  It was a further part of the conspiracy that defendants TRINI McDANIELS, ORRANDY GOODWYN, ARDELL CRANE, PATRICK GREGORY and MARGO GREGORY would and did distribute large quantities of "crack" and powder cocaine to others for sale in the areas of Petersburg and Richmond, Virginia, including, but not limited to, the following defendants: CURTIS SPAIN and RONALD KERNS;

11.  It was a further part of the conspiracy that defendant STACY JONES would and did receive quantities of "crack" and powder cocaine from members of this conspiracy for sale in the area of Waynesboro, Virginia;

12.  It was a further part of the conspiracy that members of this conspiracy would and did routinely use vehicles containing secret compartments to transport narcotics and large amounts of United States Currency, which constituted the proceeds of their drug trafficking;

13.  It was a further part of the conspiracy that members of

this conspiracy would and did use numerous aliases and fictitious identifications in order to avoid detection and arrest by law enforcement including the following:

(a).   Defendant RONALD ZEBROWSKI: aka "Ron G" aka "Mark A. Ronaldson" aka "Ronald Stewart" aka "Jerold Stewart" aka "William Thomas" aka "Charles Brooks" aka "Stanley B. Hill" aka "Daniel R. Weston" aka "Karon B. Upshaw" aka "Joe";

(b).   Defendant STEPHEN ZEBROWSKI, Jr.:  aka "Junior" aka "Lewis Brady" aka "Stevon Green" aka "Edward Cartwright" aka "Felex C. Brown" aka "Leon Richard";

(c).   Defendant DAVID ZEBROWSKI: aka "Dog" aka "Mad Dog" aka "Lewis Brady" aka "David Stewart" aka "Eric Smith";

(d).   Defendant GARVEY DIXON: aka "Rahn Wade" aka "Richie" aka "Jamaican Richard";

(e).   Defendant TRINI McDANIELS: aka "Freddie" aka "John Paul Morris" aka "Brother-in-Law" aka "Bro-Law" aka "Norman Kelly";

(f).   Defendant ORRANDY GOODWYN: aka "White Boy" aka "Randy" aka "Trash";

(g).   Defendant ARDELL CRANE:  aka "Deep Throat" aka "Slim";

(h).   Defendant PATRICK GREGORY:  aka "P";

(i).   Defendant CURTIS SPAIN: aka "Gadget";

(j).   Defendant RONALD KERNS: aka "Detroit".

14.   It was a further part of the conspiracy that members of the conspiracy would and did use "clone" cellular telephones to arrange for the distribution of cocaine;

15.    It was a further part of the conspiracy that the

8

defendants would and did generate substantial income from the distribution of powder and "crack" cocaine;

16.   It was a further part of the conspiracy that the defendants would and did distribute marijuana;

17.   It was a further part of the conspiracy that members of the conspiracy would and did utilize their drug proceeds to purchase automobiles and real estate.

### C.  Overt Acts

In furtherance of the conspiracy and to achieve the objects thereof, the defendants and their coconspirators, known and unknown to the Grand Jury, committed and caused to be committed the following overt acts in the Eastern District of Virginia and elsewhere:

1.   On or about July 27, 1990, the defendant STEPHEN ZEBROWSKI, Jr. did possess a quantity of "crack" cocaine in Chesterfield County, Virginia.

2.   On or about June 20, 1991, the defendant RONALD ZEBROWSKI did receive a shipment of cocaine in Prince George's County, Maryland.

3.  On or about June 28, 1991, the defendant DAVID ZEBROWSKI agreed to sell a quantity of "crack" cocaine to undercover police officers in Landover, Maryland.

4.   On or about October 2, 1991, the defendant TRINI McDANIELS did possess a quantity of cocaine in the County of New York, New York.

5.   On or about October 16, 1991, the defendant STEPHEN

9

ZEBROWSKI, Jr. did possess a quantity of "crack" cocaine in Bergen County, New Jersey.

6.   On various dates in the summer and fall of 1992, the defendant RONALD ZEBROWSKI paid coconspirator Antonio James to pick up shipments of cocaine in New York in a vehicle carrying a secret compartment and to deliver the cocaine to defendants RONALD ZEBROWSKI, STEPHEN ZEBROWSKI, Jr. and GARVEY DIXON in Maryland.

7.   On multiple occasions in the fall of 1993, defendant RONALD ZEBROWSKI had coconspirator Antonio James transport in a Buick automobile with a secret compartment approximately one (1) kilogram of powder cocaine per week from Maryland to defendant TRINI McDANIELS at King's Dominion amusement park in Hanover County, Virginia.   Defendant TRINI McDANIELS would give coconspirator Antonio James approximately $20,000 per kilogram to be transported back to Maryland to be given to defendant RONALD ZEBROWSKI.

8.   Beginning in January of 1994, defendant RONALD ZEBROWSKI would have coconspirator Antonio James transport in a Buick automobile with a secret compartment approximately one (1) kilogram of powder cocaine per week per person from Maryland to defendants TRINI McDANIELS, ORRANDY GOODWYN, and coconspirator Armin Harris at locations in Richmond, Virginia, and Hopewell, Virginia.  Coconspirator Antonio James then took multiple kilograms of powder cocaine to Hampton, Virginia, and delivered it to defendant DAVID ZEBROWSKI.   Coconspirator Antonio James would return to Maryland with large shipments of United States Currency,

which had been given to him by defendants McDANIELS, GOODWYN, DAVID ZEBROWSKI and coconspirator Armin Harris, in the secret compartment of the Buick automobile.

9.  On or about February 26, 1994, the defendant TRINI McDANIELS arranged for the delivery of a quantity of "crack" cocaine and marijuana from defendant RONALD ZEBROWSKI to coconspirator Roy Knight.

10.  On or about October 30, 1994, coconspirator Roy Knight spoke to defendant TRINI McDANIELS, during which conversation McDANIELS told Knight that "the horn come late," meaning that McDANIELS did not have the cellular phone that McDANIELS was going to get from defendant RONALD ZEBROWSKI for Knight.  McDANIELS told Knight that RONALD ZEBROWSKI had the phone, but got tired of waiting for it, so "Ronald just told him come on, to bring the Beemer," meaning the 525 BMW station wagon that RONALD ZEBROWSKI had just purchased, and bring the phone at a later time.

11.  On or about October 30, 1994, coconspirator Roy Knight spoke to defendant TRINI McDANIELS, during which conversation McDANIELS told Knight that defendant RONALD ZEBROWSKI "gave me a old surprise" because he got some "chrit-i-cron," which is a term for "chronic," meaning marijuana.  McDANIELS asked Knight if he "happen to know anybody that want none," meaning did Knight know anyone who wanted to purchase some marijuana.

12.  On or about October 30, 1994, coconspirator Roy Knight spoke to defendant TRINI McDANIELS, during which conversation McDANIELS asked Knight if anybody "holler at" him about the "ha

ha," meaning did anyone call wanting to purchase the marijuana. Knight asked McDANIELS how much "a quarter" pound of marijuana would cost, and McDANIELS replied "the quarter gonna be for you nine fifty."

13. On or about November 2, 1994, coconspirator Roy Knight spoke to defendant TRINI McDANIELS, during which conversation Knight asked McDANIELS to have "that tray right when I got back," meaning McDANIELS' three thousand dollars.

14. During the same November 2, 1994, conversation referenced in overt act 13, defendant McDANIELS asked Knight where "that hard piece," meaning how much crack cocaine did Knight have left of that which he was selling.

15. During that same November 2, 1994, conversation referenced in overt acts 13 and 14, McDANIELS also told Knight that his "joint," meaning pager, was not working, "so I might put Ardell," meaning defendant ARDELL CRANE's, number in, "cause he with me."

16. On or about November 3, 1994, coconspirator Roy Knight spoke to defendant RONALD KERNS, during which conversation KERNS told Knight that things were "dry" in Detroit, and that ounces of crack were selling for "nine cents," meaning nine hundred dollars, and they would soon be "four digits," meaning more than one thousand dollars. KERNS then told Knight that he had told another person that Knight "might come through" with some crack, and asked Knight if they could "sit down and talk about it."

17. On or about November 3, 1994, coconspirator Roy Knight

spoke to coconspirator Anthony Parham aka "Amp", during which conversation Parham asked Knight, "when I'ma get mine Joe?", meaning when was he going to get the "Big Eight" of powder cocaine he sought. Parham also told Knight that "that ol' boy," meaning defendant McDANIELS, had "called me last night," with "Ardell," meaning defendant ARDELL CRANE, and "Black Ball," meaning coconspirator Archie Brake, "in the car." Anthony Parham subsequently received a quantity of powder cocaine from coconspirator Roy Knight.

18. On or about November 3, 1994, coconspirator Roy Knight spoke with defendant PATRICK GREGORY, during which conversation GREGORY told Knight, "I can't get in contact with brother-in-law," meaning defendant TRINI McDANIELS. GREGORY asked Knight, "if you get in contact tell him that boy want three pisank of that green," meaning tell McDANIELS that someone wants to purchase three pounds of marijuana.

19. On or about November 4, 1994, coconspirator Roy Knight spoke with defendant TRINI McDANIELS, during which conversation McDANIELS asked Knight, "What you doing on hard time," meaning how much crack cocaine did Knight want. McDANIELS told Knight, "Let me know man, I'll bring it," but added that he was "bringing it to score now," meaning that McDANIELS was bringing crack cocaine for Knight, but that McDANIELS needed to be paid for it immediately and it would not be "fronted" to Knight.

20. On or about November 6, 1994, coconspirator Roy Knight spoke with defendant TRINI McDANIELS, during which conversation

13

Knight asked McDANIELS, "Where my phone at," meaning the cellular phone McDANIELS was to get from defendant RONALD ZEBROWSKI for Knight when McDANIELS travelled to New York City with RONALD ZEBROWSKI and others.

21. On or about November 7, 1994, coconspirator Roy Knight spoke with defendant TRINI McDANIELS, during which conversation Knight told McDANIELS that "Donis called," meaning coconspirator Adonnis Wiggins, and that Wiggins was "trying to do something," meaning purchase cocaine from McDANIELS. McDANIELS asked if Wiggins was trying to do something "on the hard side," meaning purchase crack cocaine. McDANIELS said that Wiggins was trying to "do something and do something," meaning purchase some crack and have some "fronted" to him.

22. During that same November 7, 1994 conversation referenced in overt act 21, coconspirator Roy Knight asked defendant McDANIELS for his "fiz-one," meaning the cellular phone McDANIELS was supposed to get from defendant RONALD ZEBROWSKI.

23. During that same November 7, 1994 conversation referenced in overt acts 21 and 22, defendant TRINI McDANIELS told coconspirator Roy Knight "to get that load. . . load got to go next time," meaning that Knight needed to get his white car because it had a hidden compartment in it.

24. During that same November 7, 1994 conversation referenced in overt acts 21-23, defendant TRINI McDANIELS told coconspirator Roy Knight that McDANIELS needed his "twenty cents," meaning the twenty thousand dollars Knight owed him for cocaine that McDANIELS

14

had given to Knight.

25.   On or about November 7, 1994, during a separate conversation, defendant TRINI McDANIELS told coconspirator Roy Knight that "I let you talk to Ron G.," meaning defendant RONALD ZEBROWSKI, "cause he said he going to get you the phone Thursday something like that.  Ron G. here. . . "

26.  On or about November 8, 1994, defendant TRINI McDANIELS told coconspirator Roy Knight, that "the phone kicked off, I was trying to get Ron G. tell you he he going to get the phone Thursday."

27.  During that same November 8, 1994 conversation referenced in overt act 26, defendant TRINI McDANIELS also told Knight, that he had "sold my load," meaning his car, and that "hard pieces slow round there . . . got me three slabs . . .  two soft pieces one hard piece," meaning that McDANIELS had three kilograms of cocaine, two powder and one crack.   Knight told McDANIELS he wanted to "do something on that other side," meaning that Knight wanted powder cocaine from McDANIELS.

28.   On or about November 11, 1994, coconspirator Anthony Parham told coconspirator Roy Knight that "Timmy" was "tryin' to spend him some money," and that "he say he want a quarter pounder with cheese," meaning a quarter ounce, or seven grams, of powder cocaine.  Parham subsequently delivered approximately seven grams of powder cocaine to "Timmy".

29.  On or about November 11, 1994, defendant TRINI McDANIELS asked coconspirator Roy Knight, "Where that hard piece at," meaning

how much crack cocaine had Knight sold.  Knight replied, "You know where they at . . . Not far," meaning he did not have much left to sell.  McDANIELS told Knight, "I try to help you make something," meaning that he would bring more cocaine for Knight to sell.

30.   On or about November 11, 1994, during a separate conversation, defendant TRINI McDANIELS told coconspirator Roy Knight that "I got your phone now," meaning the cellular phone McDANIELS was supposed to get for Knight from defendant RONALD ZEBROWSKI.

31.  On or about November 12, 1994, defendant TRINI McDANIELS told coconspirator Roy Knight that "When I dip up you can bring a load and your scratch," meaning when McDANIELS goes to get more cocaine, Knight can bring his white car with the compartment and his money.

32.   On or about November 12, 1994, during that same conversation referenced in overt act 31, defendant TRINI McDANIELS told coconspirator Roy Knight that he had "18 inches" on that "green monster," meaning that he had 18 inch tires on a green BMW that McDANIELS had purchased from defendant RONALD ZEBROWSKI for $22,000.  McDANIELS added that he was "clearing my slate," meaning paying off they money he owed to defendant RONALD ZEBROWSKI.

33.   On or about November 12, 1994, during that same conversation referenced in overt acts 31 and 32, coconspirator Roy Knight asked defendant TRINI McDANIELS, "where my joint at," meaning his cellular phone.  McDANIELS replied, "I got it. . .

16

talkin' on it now. . . it ain't good junk but it's a good buy."

34. On or about November 12, 1994, during a separate conversation, defendant TRINI McDANIELS asked coconspirator Roy Knight to call when he got up because he had "hard time," meaning crack cocaine.

35. On or about November 13, 1994, coconspirator Roy Knight spoke with defendant STACY JONES during which conversation JONES asked Knight, "you go do both," meaning was Knight going to sell JONES both crack and powder cocaine.

36. On or about November 13, 1994, during that same conversation referenced in overt act 35, defendant STACY JONES asked Knight, "you getting ready to do that one thing . . . Car Jahnke," meaning arranging to have a 1983 Buick Regal placed in someone else's name.

37. On or about November 13, 1994, during a separate conversation, coconspirator Roy Knight spoke with defendant STACY JONES, during which conversation JONES told Knight that JONES could come that day to bring the money that JONES owed Knight for cocaine. Knight told JONES he would send down coconspirator Rosa Carson to pick up the money, and that JONES could return the next day to get his cocaine.

38. On or about November 13, 1994, during a separate conversation, coconspirator Roy Knight spoke with defendant STACY JONES during which conversation JONES told Knight that he would be up in Richmond the next day, and asked Knight if he was going "to do both or what," meaning sell JONES crack and powder cocaine.

17

Knight said he was "comin' both."   JONES told Knight that the, "only thing about that one, this one right here. . . whatever they did I, I, can't tell you right now, but. . . it was a little bit more than the last time," meaning that the crack cocaine he had just purchased from Knight had too much "cut" in it.

39.   On or about November 13, 1994, the defendant STACY JONES did have approximately $5,000 delivered to coconspirator Roy Knight as repayment for cocaine that Knight had "fronted" him.

40.   On or about November 14, 1994, coconspirator Roy Knight spoke with defendant STACY JONES, during which conversation JONES told Knight that he told Knight that "it was 60 . . . 61," meaning that JONES had provided Knight $6100 to Knight the previous day. However, JONES said that he "still gotta kick seven" because he had $700 in his pocket that he forgot to forward to Knight.

41.   On or about November 15, 1994, coconspirator Roy Knight spoke with defendant STACY JONES, during which conversation JONES told Knight that he needed "more soft than hard," meaning more powder cocaine than crack cocaine.   JONES arranged to meet Knight at McDonald's restaurant in Richmond, Virginia, in order to purchase cocaine.   JONES told Knight to split that "Q up for him . . .ah eight-n-eight. . .hard. . . hard and soft," meaning that Knight should split a quarter kilo into eight ounces of powder cocaine and eight ounces of crack cocaine.   Knight indicated that he only had "two or three" ounces of crack.   JONES replied, "Just do soft," meaning provide the balance of the quarter kilo in powder cocaine.

18

42.  On or about an unknown date in November, 1994, the defendant PATRICK GREGORY did deliver a quantity of "crack" cocaine to coconspirator John Fogg.

43.  On or about November 15, 1994, coconspirator Roy Knight spoke with defendant TRINI McDANIELS, during which conversation McDANIELS said he had not yet called coconspirator Adonnis Wiggins. McDANIELS said he had Wiggins' "scratch," meaning money, because defendant PATRICK GREGORY had had it.  McDANIELS told Knight that Wiggins' said, "the police was following him or something told Patrick to hold it."

44.  On or about November 15, 1994, during the same conversation referenced in overt act 43, coconspirator Roy Knight spoke with defendant TRINI McDANIELS, during which conversation McDANIELS asked, "yo listen, man, my hard time, you empty or what up," meaning did Knight need any additional crack cocaine from McDANIELS.  Knight replied that he was "gonna need some more."

45.  On or about November 15, 1994, during a separate conversation, coconspirator Roy Knight spoke with defendant TRINI McDANIELS, during which conversation McDANIELS said, "you got a hit that joint. . . mix . . . flix," meaning that the cocaine McDANIELS was getting from New York had "cut" in it.

46.  On or about November 15, 1994, during the same conversation referenced in overt act 45, defendant TRINI McDANIELS asked coconspirator Knight, "What else," to which Knight replied, "Hancock," meaning that he wanted fake identification credentials from New York.  McDANIELS replied that he would "see if" he could

19

"get the original."

47.  On or about November 17, 1994, defendant PATRICK GREGORY
spoke to coconspirator Roy Knight, during which conversation Knight
told GREGORY that he brought only $3300 when GREGORY was supposed
to bring $4300 in payment for approximately six ounces of crack
cocaine that belonged to defendant TRINI McDANIELS.   Knight told
GREGORY that he still owed a "bean," meaning one thousand dollars.
GREGORY told Knight he would have "Moosa," meaning coconspirator
Ellis Briggs, bring him over in his car.

48.  On or about November 17, 1994, coconspirator Ellis Briggs
spoke to an unidentified coconspirator, during which conversation
Briggs said that, "I ran across somebody my man said he could give
you six for the four cent," meaning that BRIGGS would sell the
person six ounces of defendant PATRICK GREGORY's cocaine for
$4,000.  Briggs then said he would "get you um six and one-half,"
meaning he would provide six and one-half ounces of cocaine for
$4,000.   Briggs subsequently distributed the cocaine and then
turned over the drug proceeds to defendant PATRICK GREGORY.

49.  On or about November 17, 1994, defendant TRINI McDANIELS
spoke to defendant PATRICK GREGORY and coconspirator Ellis Briggs,
during which conversation GREGORY and Briggs asked what McDANIELS
was going to do "with them joints," meaning McDANIELS' ounces of
cocaine.

50.   On  or  about  November  17,  1994,  during  the  same
conversation referenced in overt act 49, defendant PATRICK GREGORY
asked defendant TRINI McDANIELS about the "willies," meaning ounces

of cocaine, that McDANIELS had asked GREGORY to hold.  McDANIELS asked if a "pool table," meaning a "Big Eight," or four and one-half ounces of cocaine, were left.  McDANIELS then asked if a "John Elway," referencing a quarter kilogram or nine ounces of cocaine, were left.  GREGORY told McDANIELS, "now you can't add, if you give me a John Elway how a John Elway be left."

51.  On or about November 17, 1994, during the same conversation referenced in overt acts 49 and 50, defendant PATRICK GREGORY told defendant TRINI McDANIELS that another unknown coconspirator has a "pool table," meaning eight ounces of cocaine. McDANIELS told GREGORY to "knock it off," meaning sell the cocaine. GREGORY replied, "Ha, alright boss."  McDANIELS then said, "78 you want to work with that," meaning that GREGORY owed McDANIELS $7,800 for the cocaine that McDANIELS had provided to him.

52.  On or about November 18, 1994, defendant TRINI McDANIELS spoke to coconspirator Roy Knight, during which conversation Knight asked, "some good coming," meaning, was McDANIELS bringing down any crack cocaine.  McDANIELS replied that "good coming, ain't no soft," meaning that McDANIELS had crack but not powder cocaine. Knight replied, "Alright, I want some good," meaning he wanted McDANIELS to supply him with crack cocaine.  McDANIELS replied that Knight had to "come across quick with this good now," meaning that Knight had to reimburse defendant TRINI McDANIELS for the crack cocaine quickly.

53.  On or about November 19, 1994, defendant TRINI McDANIELS spoke to coconspirator Roy Knight, during which conversation

McDANIELS said he had some "willies," meaning ounces of cocaine, to distribute. McDANIELS said that "D," meaning coconspirator Armin D. Harris, "trying to hit me back I don't think he know he supposed to get this piece right here," meaning, that Harris was paging McDANIELS, but was expecting only one kilogram of crack cocaine, not an additional kilogram of powder cocaine. Defendant McDANIELS subsequently delivered approximately two kilograms of cocaine, one powder and one crack, to Harris.

54. On or about November 19, 1994, during the same conversation referenced in overt act 53, defendant TRINI McDANIELS told coconspirator Roy Knight, that "I think Joe," meaning defendant RONALD ZEBROWSKI, "just send it to him cause he probably called the man and said why you ain't send no soft, man, this little piece of hard Joe just send this piece," meaning that McDANIELS thought that RONALD ZEBROWSKI sent an additional kilo of powder cocaine because coconspirator Armin D. Harris had complained that defendant RONALD ZEBROWSKI had provided only crack cocaine lately.

55. On or about November 19, 1994, during the same conversation referenced in overt acts 53 and 54, defendant TRINI McDANIELS told coconspirator Roy Knight, that McDANIELS was "getting ready to ... drop P off," meaning that he was riding with and about to drop off defendant PATRICK GREGORY, and that McDANIELS would be at "P kiz-amp," meaning defendant GREGORY's "camp" or home.

56. On or about November 19, 1994, during the same

22

conversation referenced in overt acts 53-55, defendant TRINI McDANIELS told coconspirator Roy Knight, that, while McDANIELS was at GREGORY's home, "that boy" or "Goodwin," meaning coconspirator Anthony Parham, was going to try to contact McDANIELS in order to purchase cocaine. McDANIELS added that he would speak to Parham "conversation wise, other wise ain't no wise," meaning that McDANIELS did not intend to front any cocaine to Parham.

57. On or about November 19, 1994, during that same conversation referenced in overt acts 53-56, defendant TRINI McDANIELS told coconspirator Roy Knight that he should "put [his] crumps together and snatch half of this siz-oft piece and the hiz-ard piece" meaning that McDANIELS thought Knight should gather Knight's money to purchase half of the kilo of "soft," or powder, cocaine and half of the "hard," or crack, cocaine that McDANIELS had available.

58. On or about November 19, 1994, defendant TRINI McDANIELS spoke to coconspirator Roy Knight and said, "see the message in your other beeper. I just talked to Ronald," meaning defendant RONALD ZEBROWSKI, "see the message in your other beeper. . . what it say?" Knight replied that it said, "21.5," meaning that defendant RONALD ZEBROWSKI was offering a kilo of cocaine for $21,500. Knight indicated he had "23 in the bag," meaning he had $23,000. McDANIELS stated that he was waiting because "Margo won't even call me back," meaning defendant MARGO GREGORY, wife of defendant PATRICK GREGORY. McDANIELS told Knight he would wait on "Pete," meaning defendant PATRICK GREGORY for thirty more minutes.

59. On or about November 19, 1994, defendant TRINI McDANIELS spoke to coconspirator Roy Knight, during which conversation McDANIELS said, "Patrick I got hot with him I cursed him out all night. . . I know you ain't got no beeper I say Moosa got a beeper," meaning that McDANIELS was angry with Defendant PATRICK GREGORY because McDANIELS could not get in touch with GREGORY to collect money. McDANIELS complained because coconspirator Ellis Briggs had a beeper through which he wanted to contact GREGORY.

60. On or about November 19, 1994, during the same conversation referenced in overt act 59, defendant TRINI McDANIELS spoke to coconspirator Roy Knight, during which conversation McDANIELS said, "I'll give you the piece when I come through," meaning McDANIELS would deliver cocaine when he came through town. McDANIELS asked Knight "where that siz-oft piz-off," meaning how much powder cocaine did Knight have remaining. Knight replied that McDANIELS knew how much powder cocaine Knight had left.

61. On or about November 20, 1994, coconspirator Roy Knight spoke to defendant TRINI McDANIELS, during which conversation McDANIELS said that he was "waiting for that boy to call me back, Joe to call me back on this number," meaning that defendant RONALD ZEBROWSKI was supposed to call McDANIELS that evening. McDANIELS also said that "Man Man," meaning coconspirator John Fogg, owed "him for that piece," meaning that Fogg owed McDANIELS for some crack cocaine.

62. On or about November 20, 1994, coconspirator Roy Knight spoke to defendant STACY JONES, during which conversation JONES

24

said, "Alright, she's back then, it should be $6700," meaning that coconspirator Pamela Burns had returned with a total of $6700 of JONES' money to pay Knight for four ounces of crack cocaine and four ounces of powder cocaine.

63. On or about November 21, 1994, coconspirator Roy Knight spoke to defendant TRINI McDANIELS, during which conversation McDANIELS said, "coming back through for some hard pieces," meaning that McDANIELS was returning through town with more crack cocaine available for sale.

64. On or about November 26, 1994, defendant TRINI McDANIELS spoke to defendant PATRICK GREGORY, during which conversation McDANIELS asked GREGORY, "where them chips at," meaning the money that GREGORY owed McDANIELS for cocaine. GREGORY replied, "at my kiz-amp," meaning that the money was at GREGORY's "camp" or home.

65. On or about November 27, 1994, defendant TRINI McDANIELS spoke to coconspirator Roy Knight, during which conversation McDANIELS told Knight he just "finished cussing . . . P out," meaning defendant PATRICK GREGORY, because GREGORY messed his "scratch up now he crying," meaning GREGORY messed his money up and now he was complaining. McDANIELS told Knight that GREGORY messed up his money selling kilos to "Mel e Mel," meaning coconspirator Melvin Christian. McDANIELS told Knight that McDANIELS kept "throwing him something," meaning "fronting" cocaine to GREGORY, and that he told GREGORY, "Partner, I don't want to hear that," meaning complaints about GREGORY not having any money.

66. On or about November 27, 1994, during that same

conversation referenced in overt act 65, defendant TRINI McDANIELS spoke to coconspirator Roy Knight, during which conversation McDANIELS told Knight that defendant PATRICK GREGORY once said he had "12 now," meaning $12,000, but GREGORY had "a pool table to hit off to somebody," meaning that GREGORY would have more cash after he sold a "pool table," meaning a "big eight" or four and on-half ounces of cocaine. McDANIELS told Knight that he had told GREGORY, "alright go head on chill just hold the scratch," meaning money. McDANIELS told Knight he had said that to GREGORY even though GREGORY was supposed "to have 12,5 . . . he had a dime," but was supposed, "to have 12,5 on the 17,8 that what he owed me," meaning defendant PATRICK GREGORY had only $10,000 of the $12,500 he owed as an installment on a total debt of $17,800 to McDANIELS for cocaine that McDANIELS had "fronted" him. However, McDANIELS told Knight, that "Ron G. just happen to pop up," meaning that defendant RONALD ZEBROWSKI called and said he needed money, so McDANIELS, in turn, needed money from GREGORY.

67.   On or about November 27, 1994, during the same conversation referenced in overt acts 65 and 66, defendant TRINI McDANIELS spoke to coconspirator Roy Knight, saying that he told defendant PATRICK GREGORY to get his money from people that GREGORY said that he could not get his money from "like Mel e Mel and Donis," meaning coconspirators Melvin Christian and Adonnis Wiggins. McDANIELS told Knight that he refused to allow defendant GREGORY to "knock off" or sell a leftover "John Elway," meaning a quarter kilogram or 9 ounces, of cocaine when GREGORY had asked.

26

68.    On or about November 27, 1994, during the same conversation referenced in overt acts 65-67, defendant TRINI McDANIELS told Knight that he advised defendant PATRICK GREGORY to handle his customers as Knight had when coconspirator Raymond Bradley was purchasing cocaine from both Knight and Armin D. Harris.    McDANIELS told Knight that he had told GREGORY that Bradley was "doing this with, with D," meaning Armin D. Harris, "and doing it with Hoon," meaning "Calhoon" or Knight.  McDANIELS said that he told GREGORY to "bear down" as Knight had on Bradley.

69.    On or about November 27, 1994, during the same conversation referenced in overt acts 65-68, defendant TRINI McDANIELS told Knight that defendant PATRICK GREGORY complained that too many people owed GREGORY for cocaine that GREGORY had provided them.

70.    On or about November 27, 1994, during the same conversation referenced in overt acts 65-69, defendant TRINI McDANIELS told Roy Knight that defendant RONALD ZEBROWSKI had told defendant PATRICK GREGORY that he was short on his payments for cocaine.  McDANIELS told Knight that "I mean, and Ronald added that joint up the other day . . . Ron G. said Freddy remember that? . . . He said man I can count myself 10 times that junk was 500, or 400 dollars short. . . . .He said it, told right in front of P."

71.  On or about November 28, 1994,  coconspirator Roy Knight spoke to defendant TRINI McDANIELS, during which conversation, defendant McDANIELS said that "Joe," meaning defendant RONALD ZEBROWSKI, was "screaming about that fifty five cents," meaning

$5500 that coconspirator Roy Knight owed for nine ounces of cocaine which  Knight had asked McDANIELS to provide to coconspirator Raymond Bradley.

72.  On or about November 28, 1994, coconspirator Roy Knight spoke to defendant STACY JONES, during which conversation JONES said that he was "having problems wid'da soft," because it's "sliced," meaning that the powder cocaine Knight had sold JONES had too much "cut" in it.  JONES added that the "hard you know it's doin'" alright, but the "dude [who] usually get like 4 and 5. . .twice a week" had called JONES to say that "he couldn't do nothin'" with the cocaine, meaning that the crack cocaine was fine, but that one of JONES' customers who purchased four to five ounces of powder twice a week had complained about the "cut".

73.  On or about November 30, 1994, coconspirator Roy Knight spoke to defendant TRINI McDANIELS, during which conversation McDANIELS said that "listen Armin D they had him yesterday. . . [a]t his house down there, scared to death took the car, tried to give me the car. . ." meaning that defendant Armin D. Harris had been followed the previous day and was scared enough to try to give his car to McDANIELS.

74.  On or about December 1, 1994, defendant TRINI McDANIELS spoke to Kim Goode, during which conversation McDANIELS told Goode to tell coconspirator Roy Knight not to "kick" "that piece I gave him the other morning," meaning not to share the information that McDANIELS had given Knight earlier that McDANIELS, RONALD ZEBROWSKI, STEPHEN ZEBROWSKI, JR. and others were travelling to New

28

York to purchase 100 kilograms of cocaine, consisting of 50 kilograms of crack and 50 kilograms of powder. McDANIELS complained that "three people came back and told me that he told them," and that the reason Knight was "so hot" was that he shared this sort of information.

75. On or about December 2, 1994, coconspirator Roy Knight spoke to defendant TRINI McDANIELS, during which conversation McDANIELS told Knight, "[l]isten up. . . [h]ey Ray Ray money too. . ." meaning that McDANIELS wanted to collect the $5500 that had been fronted to coconspirator Raymond Bradley, as well as the money that Knight owed to McDANIELS for the purchase of cocaine.

76. On or about December 2, 1994, defendant TRINI McDANIELS did pick up a quantity of United States currency in the amount of $70,000, which represented the proceeds of drug trafficking, from coconspirator Roy Knight in Ettrick, Virginia.

77. On or about December 3, 1994, coconspirator Roy Knight spoke to defendant TRINI McDANIELS, during which conversation McDANIELS asked Knight if Knight wanted McDANIELS to "hit the people up top," meaning did Knight want McDANIELS to deliver Knight's cocaine to his friends in Richmond. When Knight said no, McDANIELS told Knight to "anchor" because McDANIELS wasn't trying "to hold nothing," meaning that McDANIELS wanted Knight to find a place where McDANIELS could deliver Knight's cocaine because McDANIELS did not want to hold so much cocaine.

78. On or about December 3, 1994, coconspirator Roy Knight spoke to defendant TRINI McDANIELS, during which conversation

29

McDANIELS told Knight that McDANIELS was getting back on the "relo," meaning road, and that McDANIELS wanted to "double back an scoop that," meaning deliver some cocaine.   Knight said he wanted McDANIELS to deliver the cocaine to coconspirator Raymond Bradley.

79.   On or about December 3, 1994, during the same conversation referenced in overt act 78, coconspirator Roy Knight spoke to defendant TRINI McDANIELS, during which conversation McDANIELS told Knight that McDANIELS was going to see "if Trash got the load. . . Trash supposed to have the other load. . .I'm going to have Trash load," meaning that McDANIELS intended to find defendant ORRANDY GOODWYN, and use his car, which was then a Grey Celebrity with a secret compartment.

80.   On or about December 3, 1994, coconspirator Roy Knight spoke to defendant TRINI McDANIELS, during which conversation McDANIELS told Knight he was looking for coconspirator Raymond Bradley.   McDANIELS was looking for his "bean," meaning his thousand dollars.   McDANIELS told Knight that he could "put all that bacon in the basket," meaning he could pay for all his cocaine at once, rather than in stages.   McDANIELS told Knight that McDANIELS was going to "hiz-oller at him in a few. . . . with the grey mobile. . . with Trash joint," meaning that McDANIELS was going to "holler" or visit Bradley to deliver cocaine while driving defendant ORRANDY GOODWYN's grey car.

81.   On or about December 3, 1994, coconspirator Roy Knight spoke to defendant PATRICK GREGORY, during which conversation GREGORY asked Knight if he wanted this "John Elway's sale," meaning

did Knight want to sell a quarter kilogram, or nine ounces, of cocaine to someone else.  Knight replied that he did not have that much left.

82.  On or about December 3, 1994, coconspirator Roy Knight spoke to coconspirator John Fogg, during which conversation Fogg asked Knight if he had seen "Big Daddy," meaning defendant TRINI McDANIELS.  Fogg asked Knight to tell McDANIELS to get Fogg's "scratch," or money, whenever Knight spoke to McDANIELS.  Fogg wanted money that McDANIELS had shorted Fogg on a previous cocaine delivery.

83.  On or about December 5, 1994, coconspirator Roy Knight spoke to defendant STACY JONES, during which conversation JONES said he would be "leavin' in 'bout 'bout an hour" to come purchase cocaine from Knight.

84.  On or about December 9, 1994, defendant RONALD KERNS left a message on the answering machine of coconspirator Roy Knight in which KERNS said he would be leaving soon because he got "th' social security and th' John Hancock straight.  So I'm ready to roll," meaning that KERNS had gotten a false social security number and a false identification and was leaving Michigan for Richmond, Virginia.

85.  On or about December 9, 1994, defendant TRINI McDANIELS spoke to coconspirator Roy Knight, during which conversation McDANIELS complained about "Goodwin," meaning coconspirator Anthony Parham.  McDANIELS said that he had "two willies," meaning two ounces of cocaine, for Parham, but that Parham was complaining that

31

McDANIELS owed Parham money.

86.   On  or  about  December  9,  1994,  during  the  same
conversation referenced in overt act 85, defendant TRINI McDANIELS
told coconspirator Roy Knight that defendant RONALD ZEBROWSKI had
complained to coconspirator Anthony Parham about having underpaid.
Defendant McDANIELS told coconspirator Knight that, "Ron G. got on
the phone and said . . . that 88 cent up here you [were supposed]
to have been 11 cent. . . I told Freddy,  you come up here asking
for this that and the other.  You try to play on Freddy. . .,"
meaning that defendant RONALD ZEBROWSKI spoke to Anthony Parham on
the phone, telling Parham that ZEBROWSKI had told defendant TRINI
McDANIELS that Parham was asking for money even though Parham's
$1100 payment for cocaine purchased from defendant ZEBROWSKI was
$300 short.

87.   On or about December 11, 1994, coconspirator Roy Knight
spoke to coconspirator Adonnis Wiggins, during which conversation
Wiggins asked Knight for "a couple hundred dollars until about
tomorrow."  Wiggins also told coconspirator Knight that "Margo,"
meaning defendant MARGO GREGORY, "just came in here. . .said
Patrick got robbed. . .for a whole brick, think it was Freddie's,"
meaning that defendant MARGO GREGORY told Wiggins that a kilogram
of cocaine belonging to defendant TRINI McDANIELS had been stolen
from defendant PATRICK GREGORY.

88.   On or about December 11, 1994, defendant TRINI McDANIELS
spoke to coconspirator Roy Knight and told Knight that he and
defendant RONALD KERNS had been chased in McDANIELS' BMW, and that

32

Knight had to get McDANIELS' "scratch," meaning money, for McDANIELS. McDANIELS said that defendant KERNS was "as paranoid like I was." When Knight told McDANIELS that KERNS had a "heater," meaning firearm, McDANIELS told Knight that McDANIELS had the "heater bammered . . . at my joint hole," meaning that McDANIELS had hidden the gun in the secret compartment of the BMW.

89. On or about December 12, 1994, defendant TRINI McDANIELS did deliver a quantity of "crack" cocaine to coconspirator John Fogg for further delivery to defendant PATRICK GREGORY.

90. On or about December 11, 1994, coconspirator John Fogg spoke with defendant TRINI McDANIELS, during which conversation McDANIELS confirmed with Fogg that McDANIELS had given FOGG "590 something, right?" meaning 590 grams of cocaine. After joking that the cocaine was "straight up," meaning 500 grams, Fogg said he had gotten "526."

91. On or about December 11, 1994, during the same conversation referenced in overt act 90, coconspirator John Fogg asked defendant TRINI McDANIELS, "where that thing you get from that boy. . .Patrick . . .soft pieces," meaning where was the powder cocaine that defendant PATRICK GREGORY had provided. Defendant McDANIELS responded, "Yeah, I got it," meaning McDANIELS had the powder cocaine.

92. On or about December 12, 1994, defendant TRINI McDANIELS did possess a quantity of cocaine, a firearm and $16,174, which constituted drug proceeds, while travelling in a vehicle in Fairfax

County, Virginia.

93.   On or about December 12, 1994, coconspirator Roy Knight
spoke with defendant TRINI McDANIELS, during which conversation
McDANIELS asked Knight if he had spoken to "Ardell," meaning
defendant ARDELL CRANE.  McDANIELS said that he had been arrested
and that the police "hit me up widda' heater. . .scratch. . .found
a crumb. . ." meaning the police had arrested him with a gun,
money, and a small amount of cocaine.  McDANIELS later said the
police had taken "16 cent," meaning $16,000.

94.   On or about December 12, 1994, during the same
conversation referenced in overt act 93, defendant TRINI McDANIELS
told coconspirator Roy Knight that people owed McDANIELS "scratch.
. .34 cent" meaning that people owed McDANIELS money.  McDANIELS
told Knight to "get with Ardell," meaning defendant ARDELL CRANE.
McDANIELS said "Ardell know everythin' to do, right," but McDANIELS
told Knight that "Ardell, P, and D, ride" them, meaning that Knight
should stay on top of defendants ARDELL CRANE, PATRICK GREGORY and
coconspirator Armin D. Harris.

95.   On or about December 12, 1994, during the same
conversation referenced in overt acts 93 and 94, defendant TRINI
McDANIELS told coconspirator Roy Knight that Knight had to get the
"scriz-atch," meaning money, "for Ron G.. . . Already told Ardell
what to do, him and P. right. . . and just give [that] to "G" and
he gonna take care. . .," meaning that defendants ARDELL CRANE and
PATRICK GREGORY knew to collect the money owed to McDANIELS and
bring it to defendant RONALD ZEBROWSKI so that drug transactions

could continue.  McDANIELS told Knight that he had given them the
phone number of "Ron G.," meaning McDANIELS had given CRANE and
Harris the phone number for defendant RONALD ZEBROWSKI in order to
set up drug transactions.   McDANIELS told Knight that ZEBROWSKI
was "goin' to treat you decent."

96.  On or about December 12, 1994, defendant RONALD KERNS
spoke to an unknown female, during which conversation KERNS told
the woman that "they hemmed up," meaning arrested, "the serious
one," last night.  When the woman asked if KERNS were talking about
"R," meaning Roy Knight, KERNS replied, "no, I ain't talkin about
R. . .I'm talking about on the other end up top of him," meaning
defendant TRINI McDANIELS.

97.  On or about December 12, 1994, during the same
conversation referenced in overt act 96, defendant RONALD KERNS
told the woman that "some shit had jumped off when I was with him.
. .but we had put the move down. . ." and the police arrested
McDANIELS "[w]hen me and him branched off," meaning that KERNS had
sold cocaine with McDANIELS just before McDANIELS was arrested by
the police.

98.  On or about December 12, 1994, defendant PATRICK GREGORY
spoke to coconspirator Roy Knight, during which conversation
GREGORY told Knight that Antwon Robinson "owed brother-in-law,"
meaning defendant TRINI McDANIELS, "$3700".

99.  On or about December 12, 1994, during the same
conversation referenced in overt act 98, defendant PATRICK GREGORY
told coconspirator Roy Knight, that he, GREGORY, and "Moosa" (Ellis

Briggs), had been robbed the previous night during a drug transaction: "they . . . done came in there and um Moosa pat them down and they come without the scratch . . .[and then they] stuck us up man was getting ready to kill."

100. On or about December 12, 1994, during the same conversation referenced in overt acts 98 and 99, defendant PATRICK GREGORY told coconspirator Roy Knight that just before defendant TRINI McDANIELS had been arrested, McDANIELS had called GREGORY, "last night bout bout twelve something, one something, and told me that the people was following him. But his phone kept cutting off and the last time the phone cut off I kept beepin' and beepin' him he ain't never called me back and, um, Ardell," meaning defendant ARDELL CRANE, "said that's when them people had got him -- one something."

101. On or about December 15, 1994, defendant TRINI McDANIELS spoke to Kim Goode and told her to tell coconspirator Roy Knight, "tell him the 25 cent right, leave it with you so, so um Deep Throat can come get it," meaning that Knight should leave $25,000 with Goode so that defendant ARDELL CRANE could come pick it up.

102. On or about December 16, 1994, defendant TRINI McDANIELS spoke to coconspirator Roy Knight, during which conversation Knight asked McDANIELS if McDANIELS had spoken to "Ron G. yet," meaning defendant RONALD ZEBROWSKI. McDANIELS said, "I did, he said that's cool, listen. . .What you go do, I already told 'em right. . . you go um Bam Bam with a Big Bam. . .," meaning that McDANIELS had told defendant RONALD ZEBROWSKI what Knight wanted to purchase. Knight

36

replied, "Naw... the two big bam bam," meaning two kilograms of cocaine. McDANIELS asked Knight, "You want the deuce?" Knight then told McDANIELS that, "it might be about 40, if, if, if you know if, you know, both ways," meaning that Knight wanted to pay $40,000 if he received one kilogram of crack cocaine and one kilogram of powder cocaine.

103. On or about December 17, 1994, defendant TRINI McDANIELS spoke to Joan Goode and told her to tell coconspirator Roy Knight to "take care all his business, right. . . And to take care of Joe," meaning defendant RONALD ZEBROWSKI. McDANIELS also wanted Knight to "tell him get mine right, and put some on my book for Friday," meaning that Knight should take care of all his drug transactions and after he took care of defendant RONALD ZEBROWSKI, Knight should give some left over money to McDANIELS for his use.

104. On or about December 17, 1994, defendant TRINI McDANIELS spoke to coconspirator Roy Knight and told Knight that he was "waitin' on Slim," meaning defendant ARDELL CRANE, "to get that," meaning money, "get that, from all P," meaning defendant PATRICK GREGORY. McDANIELS told Knight that defendant ARDELL CRANE was "gonna call Ron G.," meaning that CRANE would arrange to purchase the cocaine from defendant RONALD ZEBROWSKI.

105. On or about December 17, 1994, during the same conversation referenced in overt act 104, defendant TRINI McDANIELS told coconspirator Roy Knight that "P. . .play games with my scratch lettin' it go for a quarter, right," meaning that defendant PATRICK GREGORY had messed up some of McDANIELS' money. McDANIELS

37

then said to Knight that GREGORY had "told me he on the way up there," meaning that GREGORY was about to go get some cocaine. McDANIELS said that "so, I, I guess I'm gonna have to let David," meaning defendant DAVID ZEBROWSKI, "come whack him up.  Bust him beside the grill and stuff. . . [s]hake him up a little bit," meaning McDANIELS would have defendant DAVID ZEBROWSKI rough up defendant PATRICK GREGORY due to GREGORY's mistakes with the drug money.

106.    On or about December 17, 1994, during the same conversation referenced in overt acts 104 and 105, defendant TRINI McDANIELS asked coconspirator Roy Knight, "How you gonna holler at um, cause you can let Slim and P go meet T. . .," meaning that defendants ARDELL CRANE and PATRICK GREGORY could meet coconspirator Antonio James aka "Tony" aka "T" in order to effectuate the drug purchase.  McDANIELS then told Knight that "Ardell talk to you," so that arrangements could be made.

107.    On or about December 17, 1994, defendant ARDELL CRANE spoke to coconspirator Roy Knight, during which conversation CRANE told Knight that, "Brother-in-law told me call you," meaning that defendant TRINI McDANIELS told CRANE to call Knight.    CRANE continued by saying, "And um I talked to Ron G. right. . .He told me to get you over here and call him back. . .Because he want to holler at you," meaning that defendant RONALD ZEBROWSKI wanted Knight over at CRANE's house so that ZEBROWSKI could arrange the sale of cocaine to CRANE and Knight together.

108.    On or about December 18, 1994, defendant RONALD KERNS

38

spoke to another individual, during which conversation KERNS said that he had to "Get a little more from Joe," meaning that coconspirator Roy Knight had to help set KERNS up in the drug dealing business.  KERNS continued by saying that "brother-in-law had gave me some of that flavor right. . .on the D tip right. . .straighten my thing 'wid Joe right? So I can get some work. . .," meaning that defendant TRINI McDANIELS had given KERNS some crack cocaine to sell without telling Knight or anyone else, but KERNS wanted to get things straight so that he could sell the cocaine that Knight had.

109.  On or about December 18, 1994, during the same conversation referenced in overt act 108, defendant RONALD KERNS told the other person that, "Joe gotta give me some work" because KERNS just delivered Knight the "mother ship," meaning that coconspirator Roy Knight had to help set KERNS up in the drug dealing business because KERNS had just helped Knight collect and count $41,500 to be used to purchase two kilograms of cocaine.

110.  On or about December 18, 1994, defendant STACY JONES spoke to coconspirator Roy Knight, during which conversation JONES said he had, "14 right now . . . I am try to get down in the mornin'. . .girl gonna come over [there] in the mornin'. . .," meaning that defendant STACY JONES had $1400 to pay for cocaine that Knight had "fronted" JONES, and that JONES and another person would see Knight the next day to give Knight the money.

111.  On or about December 20, 1994, defendant TRINI McDANIELS spoke to coconspirator Roy Knight, during which conversation Knight

asked for and got "Joe 1-800 number," meaning the pager number for defendant RONALD ZEBROWSKI. After McDANIELS gave Knight the number, McDANIELS told Knight that McDANIELS had "Talked to Junior yesterday, ain't talked to Ron G.," meaning that McDANIELS had talked to defendant STEPHEN ZEBROWSKI, JR., but not to defendant RONALD ZEBROWSKI. McDANIELS told Knight that McDANIELS had just spoken to defendants ARDELL CRANE and PATRICK GREGORY.

112. On or about December 18, 1994, defendant TRINI McDANIELS did telephone coconspirator John Fogg and instruct him to contact defendant RONALD ZEBROWSKI to receive a shipment of cocaine.

113. On or about December 18, 1994, the defendant RONALD ZEBROWSKI did speak with coconspirator John Fogg and tell him that coconspirator Antonio James would deliver a shipment of cocaine.

114. On or about December 18, 1994, defendant ORRANDY GOODWYN and coconspirator Antonio James did deliver a quantity of cocaine to coconspirator Roy Knight.

115. On or about December 18, 1994, defendants ORRANDY GOODWYN and ARDELL CRANE and coconspirator Antonio James did deliver a quantity of cocaine to coconspirator John Fogg.

116. On or about December 18, 1994, defendants ARDELL CRANE and RONALD KERNS and coconspirators Antonio James and Roy Knight did deliver a quantity of cocaine to coconspirator Jerome Walden.

117. On or about December 19, 1994, defendant STACY JONES received approximately 10 ounces of cocaine from coconspirator Roy Knight.

118.  On or about December 20, 1994, defendant TRINI McDANIELS gave coconspirator Roy Knight the pager number for "White Boy," meaning defendant ORRANDY GOODWYN.   Knight then asked McDANIELS whether, "you think if if what you call 'em can't get here in a reasonable time, you think he got some down here," meaning could defendant ORRANDY GOODWYN provide Knight with cocaine if CRANE and GREGORY took too long to deliver. McDANIELS replied, "Hard pieces? . . .I don't think Trash do cause um, the other night . . .  he sent it up . . . [w]hen Tony dipped. . . and Ron Giz-ee went straight iz-up," meaning that McDANIELS did not think "Trash," defendant ORRANDY GOODWIN, had any crack cocaine because GOODWYN had sent money up when coconspirator Antonio James drove down, and defendant RONALD ZEBROWSKI had driven straight up north.

119.  On or about December 20, 1994, defendant ORRANDY GOODWYN spoke to coconspirator Roy Knight, during which conversation GOODWYN said he was on his way to see "Joe n' them," meaning defendant RONALD ZEBROWSKI and others.   GOODWYN said, "I'm gon' have to call him right now, he in the dentist right now, though. Alright I'll see what I can do for you," about contacting defendant RONALD ZEBROWSKI.  Knight asked GOODWYN to try to contact defendant RONALD ZEBROWSKI because he wanted "like one and a half," meaning one and one-half kilograms of cocaine.  GOODWYN replied that he would try.

120.  On or about December 21, 1994, the defendant STEPHEN ZEBROWSKI, Jr. did possess United States Currency in the amount of $44,866, which constituted the proceeds of drug trafficking, at the

41

location of 8512 60th Avenue, College Park, Maryland.

121.   On or about an unknown date in February, 1995, defendants ORRANDY GOODWYN and CURTIS SPAIN did deliver a quantity of "crack" cocaine to coconspirator John Fogg.

122.   On or about August 11, 1995, defendant STEPHEN ZEBROWSKI, Jr., while in Ft. Lauderdale, Florida, gave a large shipment of powder cocaine to STEPHEN ZEBROWSKI, Sr. and VICTORIA ZEBROWSKI aka "Keisha" to transport to 19113 Stedwick Drive, Gaithersburg, Maryland.

123.   On or about August 11, 1995, defendants STEPHEN ZEBROWSKI, Sr. and VICTORIA ZEBROWSKI aka "Keisha" transported a large shipment of powder cocaine from Ft. Lauderdale, Florida, to Gaithersburg, Maryland, hidden in a secret compartment contained inside a vehicle and delivered it to defendant RONALD ZEBROWSKI.

124.  On or about August 11, 1995, defendant RONALD ZEBROWSKI, with the assistance of defendant GARVEY DIXON, distributed the shipment of cocaine and collected the proceeds of his drugs sales.

125.   On or about August 11, 1995, defendants STEPHEN ZEBROWSKI, Sr. and VICTORIA ZEBROWSKI aka "Keisha" transported a large shipment of United States Currency, which represented the proceeds of drug trafficking, from Gaithersburg, Maryland, to Ft. Lauderdale, Florida, hidden in a secret compartment contained inside a vehicle and delivered it to defendant STEPHEN ZEBROWSKI, Jr.

126. On or about an unknown date in October, 1995, defendant RONALD ZEBROWSKI and another coconspirator delivered approximately

42

fifteen (15) kilograms of cocaine to defendant DAVID ZEBROWSKI at 3802 Chimney Creek Drive, Virginia Beach, Virginia.

127. On or about January 5, 1996, defendants RONALD ZEBROWSKI and GARVEY DIXON did travel to the residence of defendant DAVID ZEBROWSKI at 252 West Balview Street, Norfolk, Virginia, in a 1995 Ford Bronco with a Vehicle Identification Number of 1FMEU15H3SLB75807 that contained a secret compartment that held approximately 3 kilograms of powder cocaine and a large sum of United States Currency that consisted of drug proceeds.

128. On or about January 7, 1996, defendants STEPHEN ZEBROWSKI, Sr. and VICTORIA ZEBROWSKI aka "Keisha" transported a large shipment of powder cocaine from Ft. Lauderdale, Florida, to Norfolk, Virginia, hidden in a secret compartment contained inside a Toyota Camry and delivered it to defendants RONALD ZEBROWSKI and DAVID ZEBROWSKI at 252 West Balview Street, Norfolk, Virginia.

129. On or about January 7, 1996, the defendants STEPHEN ZEBROWSKI, Sr. and VICTORIA ZEBROWSKI aka "Keisha" transported approximately $640,000 in drug proceeds in a secret compartment contained inside a Toyota Camry from 252 West Balview Street, Norfolk, Virginia, to defendant STEPHEN ZEBROWSKI, Jr. in Ft. Lauderdale, Florida.

130. On or about January 7, 1996, defendant RONALD ZEBROWSKI distributed multiple kilograms of cocaine to the following defendants at 252 West Balview Street, Norfolk, Virginia: DAVID ZEBROWSKI, ORRANDY GOODWYN, and coconspirator Armin D. Harris.

131.  On or about January 7, 1996, defendants RONALD ZEBROWSKI and GARVEY DIXON transported approximately 10 kilograms of powder cocaine from 252 West Balview Street, Norfolk, Virginia, to 19113 Stedwick Road, Gaithersburg, Maryland, in a secret compartment contained in a 1995 Ford Bronco with a Vehicle Identification Number of 1FMEU15H3SLB75807.

132.  On or about January 25, 1996, the defendant STEPHEN ZEBROWSKI, Jr., while in Ft. Lauderdale, Florida, gave a large shipment of powder cocaine to STEPHEN ZEBROWSKI, Sr. and VICTORIA ZEBROWSKI aka "Keisha" to transport to 19113 Stedwick Drive, Gaithersburg, Maryland.

133.  On or about January 26, 1996, the defendants STEPHEN ZEBROWSKI, Sr. and VICTORIA ZEBROWSKI aka "Keisha" transported a large shipment of powder cocaine from Ft. Lauderdale, Florida, to Gaithersburg, Maryland, hidden in a secret compartment contained inside a Toyota Camry.

134.  On or about January 26, 1996, the defendants RONALD ZEBROWSKI, STEPHEN ZEBROWSKI, Sr., and VICTORIA ZEBROWSKI aka "Keisha" did possess approximately nine (9) kilograms of powder cocaine and United States Currency in the amount of $315,627, which constituted the proceeds of drug trafficking, at the location of 19113 Stedwick Road, Gaithersburg, Maryland.

135.  On or about April 17, 1996, defendant RONALD ZEBROWSKI and coconspirator Mark Mosely did transport approximately 3 kilograms of cocaine and $342,500 in a secret compartment in a 1990 Toyota that was stopped in Hanover County, Virginia.

44

136.   On or about April 17, 1996, defendant RONALD ZEBROWSKI and coconspirator Mark Mosely did resist arrest and flee from troopers of the Virginia State Police after being stopped transporting approximately 3 kilograms of cocaine and $342,500 in a secret compartment in a 1990 Toyota in Hanover County, Virginia.

137.   On or about June 6, 1996, defendant RONALD ZEBROWSKI escaped from the custody of the Sheriff of Hanover County, Virginia.

138.   On or about June 6, 1996, defendants DAVID ZEBROWSKI and ORRANDY GOODWYN, with the assistance of two coconspirators that used the aliases of "Trini" and "Tall Man", caused the escape of defendant RONALD ZEBROWSKI from the custody of the Sheriff of Hanover County, Virginia, at a dental office at 5500 Monument Avenue, Richmond, Virginia.

(In violation of Title 21, United States Code, Section 846.)

## COUNT TWO

## CONTINUING CRIMINAL ENTERPRISE

THE GRAND JURY FURTHER CHARGES:

From on or about an unknown date in 1988 to May 7, 1996, in the Eastern District of Virginia, and elsewhere within the jurisdiction of the Court, the defendants

> RONALD ZEBROWSKI,
> aka "Ron G"
> aka "Mark A. Ronaldson"
> aka "Ronald Stewart"
> aka "Jerold Stewart"
> aka "William Thomas"
> aka "Charles Brooks"
> aka "Stanley B. Hill"
> aka "Daniel R. Weston"
> aka "Karon B. Upshaw"
> aka "Joe"

> STEPHEN ZEBROWSKI, Jr.,
> aka "Junior"
> aka "Lewis Brady"
> aka "Stevon Green"
> aka "Edward Cartwright"
> aka "Felex C. Brown"
> aka "Leon Richard"

did unlawfully, intentionally, and knowingly, engage in a Continuing Criminal Enterprise, that is, they did violate Title 21, United States Code, Sections 841 and 846, including, but not limited to, those violations alleged in Count One of this indictment, which are realleged and incorporated by reference herein, and did commit other violations of said statutes, which violations were part of a continuing series of violations of said statutes by the defendants, in concert with at least five other persons with respect to whom the defendants occupied the positions of organizer, supervisor, and manager, and from which the defendants obtained substantial income and resources.

(In violation of Title 21, United States Code, Section 848).

## COUNT THREE

## POSSESSION WITH INTENT TO DISTRIBUTE "CRACK" COCAINE

THE GRAND JURY FURTHER CHARGES THAT:

On or about December 18, 1994, at Petersburg, Virginia, in the Eastern District of Virginia and elsewhere within the jurisdiction of the Court, the defendants

        RONALD ZEBROWSKI,
           aka "Ron G"
           aka "Mark A. Ronaldson"
           aka "Ronald Stewart"
           aka "Jerold Stewart"
           aka "William Thomas"
           aka "Charles Brooks"
           aka "Stanley B. Hill"
           aka "Daniel Weston"

        TRINI McDANIELS,
           aka "Brother-in-Law"
           aka "Bro-Law"
           aka "Freddie"
           aka "John Paul Morris"
           aka "Norman Kelly"

        ORRANDY GOODWYN,
           aka "Randy"
           aka "White Boy"
           aka "Trash"

        ARDELL CRANE,
           aka "Slim"
           aka "Deep Throat"

        RONALD KERNS,
           aka "Detroit"

did unlawfully, knowingly and intentionally possess with intent to distribute a Schedule II narcotic controlled substance, that is more than 50 grams of a mixture and substance described in Title 21, United States Code, Section 841(b)(1)(a)(ii), which contains cocaine base, commonly known as "crack", and did aid, abet, and assist one another and others in the commission of said offense.

(In violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2).

47

## COUNT FOUR

### POSSESSION WITH INTENT TO DISTRIBUTE "CRACK" COCAINE

THE GRAND JURY FURTHER CHARGES THAT:

On or about an unknown date in February, 1995, at Ettrick, Virginia, in the Eastern District of Virginia and elsewhere within the jurisdiction of the Court, the defendants

> ORRANDY GOODWYN,
> aka "Randy"
> aka "White Boy"
> aka "Trash"
>
> CURTIS SPAIN,
> aka "Gadget"

did unlawfully, knowingly and intentionally possess with intent to distribute a Schedule II narcotic controlled substance, that is more than 50 grams of a mixture and substance described in Title 21, United States Code, Section 841(b)(1)(a)(ii), which contains cocaine base, commonly known as "crack", and did aid, abet, and assist one another and others in the commission of said offense.

(In violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2).

## NOTICE OF FORFEITURE:   21 U.S.C. SECTION 853(a)

The allegations of Count One of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 21, United States Code, Section 853(a). As a result of the foregoing offenses, defendants

> RONALD ZEBROWSKI,
> aka "Ron G"
> aka "Mark A. Ronaldson"
> aka "Ronald Stewart"
> aka "Jerold Stewart"
> aka "William Thomas"
> aka "Charles Brooks"
> aka "Stanley B. Hill"
> aka "Daniel R. Weston"
> aka "Karon B. Upshaw"
> aka "Joe"
>
> STEPHEN ZEBROWSKI, Jr.,
> aka "Junior"
> aka "Lewis Brady"
> aka "Stevon Green"
> aka "Edward Cartwright"
> aka "Felex C. Brown"
> aka "Leon Richard"
>
> DAVID ZEBROWSKI,
> aka "Lewis Brady"
> aka "David Stewart"
> aka "Mad Dog"
> aka "Eric Smith"
>
> STEPHEN ZEBROWSKI, Sr.,
>
> VICTORIA ZEBROWSKI,
> aka "Keisha"
>
> GARVEY DIXON,
> aka "Rahn Wade"
> aka "Richie"
>
> TRINI McDANIELS,
> aka "Brother-in-Law"
> aka "Bro-Law"
> aka "Freddie"
> aka "John Paul Morris"
> aka "Norman Kelly"

49

PATRICK GREGORY,
aka "P"

shall forfeit to the United States all property, real and personal, constituting, or derived from, any proceeds obtained directly or indirectly from the aforesaid offense or all property, real and personal used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of the aforesaid offenses, with all such interests, wherever located, and in whatever name held, including but not limited to the following:

I.  RONALD ZEBROWSKI:

A.  Real Estate:

1.  The residence located at the commonly known address of 19113 Stedwick Drive, Gaithersburg, Maryland, which is also more specifically known as: Lot 114, Block E-9, Montgomery Village-Stedwick, Montgomery County, Maryland;

2.  The residence located at the commonly known address of 8512 60th Avenue, College Park, Maryland, which is also more specifically known as: Lot numbered (19) in Block lettered "A" in the subdivision known as "Greenbrier Knolls", as per plat thereof recorded in Plat Book WWW26 at Plat 57, among the Land Records of Prince George's County, Maryland, said property being in the 21st Election District of said county.

3.  The residence located at the commonly known address of 7490 N.W. 42nd Court, Lauderhill, Florida, which is also more specifically known as: Lot 1, Block 3, of Boulevard North, According to the Plat Thereof Recorded

50

in Plat Book 92, Page 18 of the Public Records of Broward
County, Florida.

B.  **Vehicles:**

1.  1995 Ford Bronco with a Vehicle Identification Number
of 1FMEU15H3SLB75807;

2.  1995 Nissan Maxima with a Vehicle Identification
Number of 1CA21D2ST657202;

3.  1995 Toyota Supra with a Vehicle Identification
Number of JT2JA82J450025016;

4.  1993 Mercedes Benz S600C with a Vehicle
Identification Number of WDBGA76E7PA103510;

5.  1994 Mercury Villager with a Vehicle Identification
Number of 2DV11W6RDJ00082;

6.  1993 Cadillac STS with a Vehicle Identification
Number of 1G6KY529XPU812549;

7.  1994 Nissan Altima with a Vehicle Identification
Number of IN4BU31D2RC233878;

8.  1994 Jeep Cherokee with a Vehicle Identification
Number of 1J4GZ7847RC172815;

9.  1995 Infiniti Q45 with a license plate from the
District of Columbia with the number of 774-763;

10.  1997 BMW with a Vehicle Identification Number of
ABJ53295JO81793.

II.  **STEPHEN ZEBROWSKI, Jr.:**

A.  **Real Estate:**

1.  The residence located at the commonly known address

51

of 4120 N.W. 30th Terrace, Lauderdale Lakes, Florida, which is also more specifically known as: a portion of the N.W. 1/4 of Section 20, Township 49 South, Range 42 East, Broward County, Florida;

2. The condominium located at the commonly known address of 4899 N.W. 26th Court, #48, Lauderdale Lakes, Florida, which is more specifically known as: That certain Condominium Parcel composed of Unit No. 148 and the undivided share in those common elements appurtenant thereto, in accordance with and subject to the covenants, conditions, restrictions, terms and other provisions of that certain Declaration of Condominium of Cypress Chase Condominium No. 4, together with the Exhibits thereto, as recorded in Official Records Book 5718 at pages 1 through 108, inclusive, of the Public Records of Broward County, Florida;

3. The residence located at the commonly known address of 9051 N.W. 35th Place, Sunrise, Florida, which is more specifically known as: Lot 1, Block 3, Villa del Sol, according to the Plat thereof as recorded in Plat Book 81, Page 19 of the Public Records of Broward County, Florida.

4. The residence located at the commonly known address of 4410 N.W. 73 Avenue, Lauderhill, Florida 33319, which is more specifically known as: Lot 5 in Block 2 of Boulevard East, according to the Plat thereof, recorded

in Plat Book 94, at page 47, of the Public Records of Broward County, Florida.

## B. Vehicles:

1.  1993 Mercury Van with a Vehicle Identification Number of [4M]2DV11WXPDJO4746 with License Plate Number 749-898 from the District of Columbia;

2.  1995 Nissan Maxima with a Vehicle Identification Number of 1CA21D2ST602832 with License Plate Number 789-894 from the District of Columbia;

3.  1988 Buick Regal with a Vehicle Identification Number of 2G4WB14W9J146 with License Plate Number 835-BAD from the State of Maryland.

## III.   DAVID ZEBROWSKI:

## A.   Real Estate:

1.  A nightclub operating under the name of "The Club House" which is located at the following address:  5476 Virginia Beach Boulevard, Virginia Beach, Virginia;

2. The residence located at the commonly known address of 252 West Balview Avenue, Norfolk, Virginia, which is also more specifically known as:  All those certain lots, pieces or parcels of land with the buildings and improvements thereon, now or formerly numbered 252 Balview Avenue, Norfolk, Virginia, and also known, numbered and designated as the Eastern Forty-seven (47) feet of Lot Twenty-Five (25) and Western Twenty-Five (25) of Lot Twenty-three (23), in Block Nine (9), as shown on

53

the plat of Property of Theodore C. Lamb and Adella H. Page at Ocean View, which said plat is duly recorded in the Clerk's Office of the Circuit Court of the City of Chesapeake, Virginia, in Map Book 7, at page 1; said property as to Lot 25 fronting 47 feet on the North side of Balview Avenue and extending back between parallel lines 100 feet; said property as to Lot 23 fronting 25 feet on the North side of Balview Avenue and extending back between parallel lines 100 feet;

3. The residence located at the commonly known address of 110 Patton Place, Chesapeake, Virginia, which is also more specifically known as: All that certain lot, piece or parcel of land, with the buildings and improvements thereon, situate, lying and being in the City of Chesapeake, Virginia, being known, numbered and designated as Lot Six (6) as shown on the plate entitled "Princeton Halls, Section One", and duly recorded in the Clerk's Office of the Circuit Court of the City of Chesapeake, Virginia, in Map Book 42, at page 78;

4. The residence located at the commonly known address of 5374 Canterford Lane, Virginia Beach, Virginia, which is also more specifically known as: All that certain lot piece or parcel of land, with the buildings and improvements thereon, situate, lying and being in the City of Virginia Beach, Virginia, and being known, numbered and designated as Lot 6, as shown on that

certain plat entitled, "Subdivision Plat of Parcel A, Carriage Mill, Kempsville Borough-Virginia Beach, Virginia", which plat is duly recorded in the Clerk's Office of the Circuit Court for the City of Virginia Beach, Virginia, in Deed Book 2489, at Page 1153;

5.   The residence located at the commonly known address of 3802 Chimney Creek Drive, Virginia Beach, Virginia, which is also more specifically known as:   All that certain lot, piece or parcel of land, with the buildings and improvements thereon, lying, situate and being in the City of Virginia Beach, Virginia, and being known, numbered and designated as Lot 5, Block E, as shown on the certain plat entitled, "Subdivision of Blocks C, D, E, F & G, Townhomes at Chimney Hill, Section Four", which said plat is duly recorded in the Clerk's Office of the Circuit Court of the City of Virginia Beach, Virginia, in Map Book 167, at Page 45;

## B.  Vehicles:

1.   1992 Toyota Camry with a Vehicle Identification Number of 4T1SK11EXNUO65937;

2.    1988 Ford Taurus Station Wagon with a Vehicle Identification Number of 1FABP55U7JA101647;

3.   1992 Porsche 944 with a Vehicle Identification Number of OCA2967NS840656;

4.    1996 Dodge Caravan with a Vehicle Identification Number of 1C4GP64L1TB347363;

5.   1995 Ford Winstar with a Vehicle Identification Number of 2FMDA5146SBB12117.

IV.   STEPHEN ZEBROWSKI, Sr.:

A.   Real Estate:

1.   The residence located at the commonly known address of 7311 North West 46th Court, Lauderhill, Florida, which is also more specifically known as:  Lot 35, Block 5, Boulevard East, according to the plat thereof, recorded in Plat Book 94, Page 47, of the Public Records of Broward County, Florida;

2.   The residence located at the commonly known address of 5480 Oakwood Road, Plantation, Florida, which is also more specifically known as:  Lot 6 in Block 9 of Plantation Manors, according to the Plat thereof, as recorded in Plat Book 44, at page 6, of the public records of Broward County, Florida.

B.   Vehicles:

1.   1988 Chevy S-10 Pickup Truck with a Vehicle Identification Number of 1GCCS19Z7J2269147;

2.   1988 Dodge Ram Van with a Vehicle Identification Number of 2B6HB23Y9JK112505;

V.   VICTORIA ZEBROWSKI aka "Keisha":

A.   Real Estate:

1.   The residence located at the commonly known address of 433 North West 45th Street, Ft. Lauderdale, Florida, which is also more specifically known as: North Andrews

56

Gardens 30-42 B Lot 17 E 36, 18 W 28 Block 14, Broward County, Florida;

2.   The residence located at the commonly known address of 4996 South West 7th Street, Margate, Florida, which is also more specifically known as:  Lot 46, Block 9, Subdivision:  Oakland Hills 4th Section Recorder's Map Reference:  PB 80/16, Broward County, Florida;

3.   The residence located at the commonly known address of 5320 South West 6th Street, Plantation, Florida, which is also more specifically known as:  Plantation Park Seventh Add Revised Plat 64-19 b Lot 7 Block 2, Broward County, Florida;

4.   The residence located at the commonly known address of 315 Knickerboker Avenue, Paterson, New Jersey, which is also more specifically known as: Lot 8, Block K1339, District 08, Paterson, New Jersey.

## VI.   GARVEY DIXON:

## A.   Vehicles:

1.   1995 Mercury Sable with a Vehicle Identification Number of ELM50418A617100;

## VII.   TRINI McDANIELS:

## A.   Real Estate:

1.   The residence located at the commonly known address of 7380 North West 37th Street, Lauderhill, Florida, which is also more specifically known as: Lot 7 Block 4, The Wood Boulevard West according to the Plat thereof

recorded in Plat Book 92 Page 19 of the Public Records of Broward County, Florida.

## VIII.  PATRICK GREGORY:

## A.  Vehicles:

1.  1991 Mazda MPV Van with a Vehicle Identification Number of JM3LV5221M0346419.

## IX.  Substitute Assets:

In the event that any property described as being subject to forfeiture pursuant to Title 21, United States Code, Sections 853, as a result of any act or omission of the defendants:

(1) cannot be located upon exercise of due diligence;

(2) has been transferred or sold to, or deposited with, a third party;

(3) has been placed beyond the jurisdiction of the court;

(4) has been substantially diminished in value; or

(5) has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants, up to an amount equivalent to the value

of the property described above.


Pursuant to Title 21, United States Code, Section 853(a).




A TRUE BILL:

FOREPERSON




HELEN F. FAHEY
UNITED STATES ATTORNEY

M. Hannah Lauck
Assistant United States Attorney

David Novak
Assistant United States Attorney




59